# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

N.A.1, N.A. 2,

                        Petitioners,

v.

PAMELA BONDI, et al.,

                        Respondents.

Case No.: 25-cv-3057-BJC-MMP

**ORDER GRANTING PETITIONS FOR WRIT OF HABEAS CORPUS**

    Pending before the Court are Petitions for Writ of Habeas Corpus[1] filed by Petitioner N.A. 1 and Petitioner N.A. 2.[2] Petitioners are currently detained at the Otay Mesa Detention Center in San Diego, California and seek immediate release from custody or a bond hearing.

//

---

[1] The present case has been consolidated with case number 25-cv-3058-BJC-MMP.

[2] Each Petition was filed under the pseudonym "N.A." with a footnote that identified the Petitioner by name and stated that the Petitioner would move the Court for leave to proceed under the pseudonym "N.A." ostensibly to protect the identity of the Petitioner. No motions to proceed under a pseudonym have been filed. However, the Court identifies Petitioners as "N.A.1" and "N.A.2" in an abundance of caution.

1

25-cv-3057-BJC-MMP

## I.   BACKGROUND

Petitioner N.A.1 is a 19-year-old deaf mute Russian citizen of Armenian descent. Petitioner N.A. 2 is the 49-year-old father of N.A.1 and is a citizen of Armenia and Russia. On February 7, 2025, Petitioners N.A.1 and N.A.2 entered the United States at the Otay Mesa Port of Entry with three additional family members.[3]  Petitioners did not have valid entry documents to enter the United States.  On February 9, 2025, DHS completed a Form I-831 which charged each Petitioner with a violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien not in possession of a valid entry document.  ECF No. 6-1 at 2; ECF No. 7-1 at 2.

On May 28, 2025, Petitioner N.A.1 was issued a Notice to Appear (NTA), which initiated removal proceedings under 8 U.S.C. § 1229a against him.  Return in Opposition, ECF No. 6 at 2.  Petitioner N.A. 2 states that Respondents "commenced removal proceedings against him in immigration court" but does not state when that occurred. Traverse, ECF No. 11 at 2.  On August 22, 2025, N.A. 1 and N.A. 2 filed Form I-589 asylum applications. The pending asylum applications were set for merits hearings on February 13, 2026, but have been continued to March 13, 2026, due to the immigration court's failure to provide interpreters in Armenian Sign Language and Russian Sign Language for Petitioner N.A. 1.  ECF No. 16.

On November 8, 2025, Petitioners each filed a Petition for Writ of Habeas Corpus, arguing that they are being detained without a meaningful opportunity to seek a bond hearing, in violation of 8 U.S.C. § 1225.  Pet. ¶ 6, ECF No. 1.  Petitioners seek their immediate release from custody or request that the Court issue an Order requiring Respondents to provide a bond and custody redetermination hearing within 14 days to meaningfully consider their eligibility for release from DHS custody. Petitioners also seek a preliminary injunction to obtain copies of their relevant medical records[4] from Otay Mesa

---

[3] The individuals were N.A.2's wife, mother-in-law, and daughter. On November 17, 2025, these individuals were released on Alternative to Detention.  ECF No. 11 at 6.

[4] N.A. 1 claims he "suffers from headaches, dizziness, visual disturbances, numbness, tingling, and

25-cv-3057-BJC-MMP

Detention Center. [5]

## I.   LEGAL STANDARD

Courts may grant habeas corpus relief to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241; *see also Hamdi v. Rumsfeld,* 542 U.S. 507, 525 (2004) ("[T]he writ of habeas corpus remains available to every individual detained within the United States.").  Courts are authorized to grant writs pursuant to § 2241 to noncitizens in custody in violation of the Constitution or laws or treaties of the United States.  *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999).

## II.   DISCUSSION

### A. Jurisdiction

Section 1252(g) divests courts of jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).  The provision must be read narrowly to address only those actions involving the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders and does not apply all of the decisions or actions that may be a part of the deportation process." *Ibarra-Perez v. United States,* 154 F.4th 989, 996 (9th Cir. Aug. 27, 2025).  Challenges to unconstitutional practices and policies that do not arise from the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders, but are merely collateral to those, are not subject to section 1252(g). *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (citing

weakness, and the severe disabilities of deafness and muteness, which have been exacerbated by the ongoing threat of removal. Pet. ¶ 13.  Petitioner N.A. 2 claims he has "high blood pressure and diabetes, which have been exacerbated by the ongoing threat of removal and the uncertainty of his detention." Pet. ¶ 13. However, habeas relief is available only to challenge the legality or duration of confinement, not to challenge conditions of confinement, including access to medical records. Therefore, these claims are denied. *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023)

[5] Petitioners seek reasonable attorney's fees and costs under the Equal Access to Justice Act. That request is **DENIED without prejudice**. Petitioner's counsel may submit an appropriate EAJA fee application by March 31, 2026.

3

*McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492. (1991)).

Here, Petitioners do not seek review of any removal order or merits determination, but instead directly challenge the legality of detention itself, arguing that their placement into §1225(b)(1) detention following the termination of their Section 1229a proceedings without prejudice "exceeds the statutory bounds set by Congress and is therefore subject to challenge under §2241." ECF No. 8 at 10; ECF No. 11 at 8. Because challenges to detention without bond are generally collateral to, and do not arise from, the decision to commence and adjudicate proceedings§ 1252(g) does not deprive this Court of jurisdiction to hear Petitioner's claims. See *D.D. v. LaRose*, No. 25-CV-2681-BJC-JLB (S.D. Cal. Oct. 22, 2025). Accordingly, the Court retains jurisdiction over the petitions for writ of habeas corpus.

**B. Merits**

Non-citizens who arrive in the United States at a Port of Entry without valid documentation, such as Petitioners, are considered applicants for admission subject to Section 1225(a)(1). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). These applicants are "inspected by immigration officers" to determine whether they may be admitted into the United States. 8 U.S.C. § 1225(a)(3). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to arriving aliens and "certain other" aliens "initially determined to be inadmissible due to fraud, misrepresentation, or *lack of valid document.*" *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i))(emphasis added). These aliens are generally subject to expedited removal proceedings. See 8 U.S.C. § 1225(b)(1)(A)(i). But if "the alien indicates an intention to apply for asylum . . . or a fear of persecution," immigration officers will refer the alien for a credible fear interview. 8 U.S.C. § 1225(b)(1)(A)(ii). "If the officer determines at the time of the interview that [the] alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added).

"Detention under 8 U.S.C. § 1225 must comport with due process." *Markov v. LaRose*, 2026 WL 92069, *2 (S.D. Cal. Jan. 13, 2026). "Nearly all district courts that have considered [the constitutionality of prolonged mandatory detention] agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Singh v. Barr*, 400 F. Supp. 3d 1005 (S.D. Cal. 2019) (internal quotation marks and citations omitted) (cleaned up) (collecting cases). Courts must consider various factors when determining whether detention is unreasonable, including "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022); see also *Banda v. McAleenan*, 385 F.Supp.3d 1099, 1106 (W.D. Wash. June 12, 2019). A majority of district courts have held that prolonged detention without a bond hearing may run afoul of the Fifth Amendment's due process protections where detention exceeds 11 months. See *Sadeqi v. LaRose*, 2025 WL 3154520, *3 S.D. Cal. Nov. 12, 2025)(collecting cases). Although the Supreme Court in *Department of Homeland Security v. Thuraissigiam,* 591 U.S. 103, 107 (2020) held that a petitioner seeking admission to the country did not have additional due process rights beyond those granted by statute," *Thuraissigiam* did not limit a petitioner's ability to raise a due process challenge to the length of detention, instead limiting its analysis to whether an individual had due process rights to admission. *See Sadeqi, *2.

The Court agrees with the majority of district courts that have found that a petitioner detained under Section 1225(b)(1) may challenge prolonged detention without a bond hearing on the basis of due process. This Court likewise agrees with those district courts that find *Thuraissigiam* does not limit an individual's right to challenge detention, finding instead that it limits the holding to an arriving alien's due process rights to admission. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever.")

The Court finds that Petitioners detention since February 7, 2025 -- for over 12 months -- without a bond hearing is unreasonable and violates due process. Petitioners have no criminal history and are seeking asylum.  Their asylum merits hearing was recently delayed due to the failure to provide appropriate interpreters. Accordingly, the Court finds that Petitioners are "entitled to a prompt and individualized bond hearing, at which Respondents must justify [Petitioners'] continued detention by a showing of clear and convincing evidence that Petitioner[s] would likely flee or pose a danger to the community if released."[6] *See generally Sadeqi*,  2025 WL 3154520, *4 (citing *Singh v. Holder,* 638 F.3d 1196, 1203 (9th Cir. 2011), abrogated on other grounds by *Jennings v. Rodriguez*, 583 U.S. 281, (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond").

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **GRANTS** Petitioners' applications and **ORDERS** Respondent to conduct a bond hearing in which the government has the burden of showing by clear and convincing evidence that Petitioners are a flight risk or danger **no later than March 6, 2026**.

**IT IS SO ORDERED**.

Dated:  February 19, 2026

_____
Honorable Benjamin J. Cheeks
United States District Judge

---

[6] An appropriate Armenian/Russian sign language interpreter should be provided at the bond hearing to ensure that N.A.1 understands the proceeding.

25-cv-3057-BJC-MMP

25-cv-3057-BJC-MMP